**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DANIEL AMAYA,** | ) | |
| **R72828,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 16-cv-1390-SMY** |
| **vs.** | ) | |
| | ) | |
| **KIMBERLY BUTLER, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Daniel Amaya, an inmate housed at Pinckneyville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff was formerly housed at Menard Correctional Center ("Menard") and his claims in the instant Complaint relate to his time at Menard.  Plaintiff claims that while he was incarcerated at Menard, on or about April 1, 2016, his constitutional rights were violated during a strip search and cell shake down conducted by members of the Orange Crush tactical team (the "shake down").  In connection with these claims, Plaintiff identifies more than 200 Defendants.  Among the Defendants are Kimberly Butler (warden), William Rees (assistant warden), Anthony Williams (assistant warden), Doug Lyerla (assistant warden), John R. Baldwin (acting director), Leslie McCarty (administrative review board member), Jacob Weatherford (mental health advisor), Jane Doe (nurse), Dr. Trost & Associates, Kelly Pierce (counselor), John Doe (chief of operations for IDOC), John Does (201 members of the Orange Crush tactical team), and Phelps (internal affairs officer).

1

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

*Preliminary Comment*

Plaintiff's Complaint and accompanying exhibits consist of 156 pages. The first 106 pages of the Complaint are devoted to identifying the numerous Defendants. (Doc. 1; Doc. 1-1; Doc. 1-2, pp. 1-5). Plaintiff's statement of claim consists of only two pages and contains very

generic allegations. (Doc. 1-2, pp. 31-32). Plaintiff has also attached a number of grievances, medical records and affidavits. (Doc. 1-2, pp. 9-31, 33-42).

In an effort to identify material relevant to Plaintiff's claims, the Court has reviewed Plaintiff's supporting exhibits, which contain a litany of allegations and facts. The Court emphasizes that it is only considering facts which specifically address the claims Plaintiff has actually alleged or attempted to allege in his Complaint. In other words, the Court has not extracted facts from Plaintiff's exhibits in an attempt to fashion claims that Plaintiff has not alleged. *See United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (it is not the responsibility of the Court to comb through Plaintiff's exhibits to fashion claims on Plaintiff's behalf). For example, a grievance filed with the Complaint alleges that in response to having filed grievances, Plaintiff was denied access to religious services. (Doc. 1-2, pp. 14, 36). Such an allegation might support a claim for retaliation. However, Plaintiff's Complaint does not assert a claim for retaliation that alludes to this conduct. To the extent that Plaintiff intended to bring additional claims premised solely on facts included in his exhibits, those claims should be considered dismissed without prejudice as inadequately pled.

*The Allegations*

According to the Complaint, on April 1, 2016, members of the Orange Crush tactical team sexually abused Plaintiff and other inmates in the East Cell House. (Doc. 1-2, p. 31). The Complaint does not provide any additional detail with respect to the shake down. However, the exhibits attached to Plaintiff's Complaint provide the following additional information.

On April 1, 2016, members of the Orange Crush tactical unit subjected Plaintiff and other inmates to a strip search, shake down and other humiliating abuse. (Doc. 1-2, pp. 9-10, 12, 33-42). The Orange Crush tactical unit paraded the prisoners from their cells to the prison

3

chapel. (Doc. 1-2, p. 10). During this time, Orange Crush officers yelled at the inmates to keep their heads and eyes down. *Id*. The officers were not wearing any identification tags. (Doc. 1-2, p. 9). Additionally, officers repeatedly grabbed Plaintiff's "ass and cock and balls" and one officer made harassing comments, such as "fuzzy wuzzy" and "easy access." (Doc. 1-2, pp. 9-10).

An affidavit provided by Plaintiff's cellmate also describes this incident. According to the affidavit, Plaintiff was strip searched in his cell. (Doc. 1-2, pp. 34-35). During the strip search, Plaintiff's cellmate heard unidentified officers instruct Plaintiff to bend over and "spread them." *Id*. He then heard a blowing noise and heard Plaintiff yell "man what the fuck?" *Id*. (*See also* Doc. 1-2, p. 29) (an officer made sexual comments and "blew on [Plaintiff's] ass while [Plaintiff was] being shook down").

From what the Court can discern, Plaintiff's claims pertaining to the shake down are directed at the Orange Crush Defendants and certain supervisory officials (Menard's warden, assistant wardens, and acting director). The Orange Crush Defendants include John Doe (described as the chief of operations for IDOC and the individual responsible for the Orange Crush tactical team) and approximately 200 John Does (described generically as members of the Orange Crush tactical team who participated in the shake down). (Doc. 1, pp. 6-50; Doc. 1-1; Doc. 1-2 pp. 1-5). None of the John Does are specifically associated with any conduct involving the Plaintiff. The supervisory defendants include Butler, Rees, Williams, Lyerla and Baldwin. Plaintiff contends that these individuals are subject to liability because they exercise control over Menard (Doc. 1, pp. 1-3) and/or because these Defendants had prior knowledge of the tactics being used by the Orange Crush tactical team. (Doc. 1-2, p. 31).

Plaintiff contends the shake down violated his right to be free from cruel and unusual punishment, was the result of a conspiracy, and constitutes the intentional infliction of emotional distress. (Doc. 1-2, pp. 31-32). The Complaint also indicates that Plaintiff is attempting to bring one or more claims pertaining to grievances. The Complaint alleges that "Defendants, wardens, Lieuten[a]nts, sergeants, mental health staff, nurses, Dr. Trost & associates, internal affairs, John R. Baldwin, Leslie McCarty, [and] Kellie Pierce, failed to intervene" regardless of numerous grievances. *Id.*

The Complaint also includes a number of exhibits that involve and/or discuss grievances filed by the Plaintiff and other inmates. Plaintiff filed grievances pertaining to the April 1, 2016 shake down alleging PREA violations. (Doc. 1-2, pp. 9-10, 12, 16, 27-28). He also filed grievances pertaining to the mishandling of his PREA grievances, officer conduct in relation to his PREA grievances, his PREA examination and retaliation. (Doc. 1-2, pp. 11-16). Plaintiff's grievances and related appeals were denied. (Doc. 1-2, pp. 17-25).

Plaintiff further alleges that Defendants violated the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15607. (Doc. 1-2, p. 32). Specifically, he contends that Defendants are not properly trained to handle sexual assault investigations. *Id.* (*See also* Doc. 1-2, pp. 11, 29) (grievance alleging nurse that conducted PREA examination was not a SANE nurse and was inadequately trained) Plaintiff also alleges that "medical staff" mislead, intimidate, and destroy evidence. *Id.*

Although Plaintiff's list of defendants includes information suggesting that certain defendants are connected with Plaintiff's PREA examination, the statement of claim is so generic that the Court cannot identify with any certainty which defendants are being sued in connection with Plaintiff's PREA claims.

The information contained in the list of defendants also includes several stand-alone allegations that are not clearly related to any claims asserted in Plaintiff's statement of claim. For instance, the list of defendants states that Phelps, an internal affairs officer, intimidated Plaintiff during his PREA examination. However, the statement of claim does not assert a claim pertaining to Phelps or the alleged intimidation.

**Discussion**

*Dismissal of Improper Defendant*

Plaintiff has named "Dr. Trost & Associates" as a Defendant. He alleges that this Defendant is subject to liability because, as a group, "they were contracted to oversee sexual assault cases and failed to adequately train employees." (Doc. 1, p. 4). A collective defendant such as "Dr. Trost & Associates" does not comply with Rule 10(a) of the Federal Rules of Civil Procedure. In order to state a claim against Dr. Trost and any of his associates, Plaintiff must name each person individually in his caption and must then associate each individual defendant with conduct specifically alleged in his complaint. Accordingly, "Dr. Trost & Associates" shall be dismissed from this action without prejudice.

*Dismissal of Phelps*

Plaintiff's list of defendants indicates that Phelps intimidated Plaintiff during his PREA examination. However, the statement of claim does not include any allegations as to Phelps or that clearly relate to intimidation during his PREA examination. Plaintiff's vague reference to intimidation is insufficient to plausibly suggest a right to relief under Section 1983 or to fairly put Defendants on notice of the claims against them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Accordingly, Phelps shall be dismissed without prejudice.

*Plaintiff's Claims*

The Court will begin with a preliminary note concerning the handling of certain Orange Crush cases in the Southern District of Illinois. Plaintiff's Complaint raises allegations similar to the pleading in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, which was filed in this Court on March 19, 2015. The plaintiff in *Ross* is seeking injunctive relief and damages on behalf of himself and a class of prisoners who were subjected to similar strip searches while incarcerated at Illinois prisons during 2014. Plaintiff's claims, however, are outside of the time frame of the claims at issue in *Ross.* Accordingly, Plaintiff's action will not be consolidated with the *Ross* action. Nonetheless, the Court is mindful of the similarity of the allegations in the *Ross* action in evaluating Plaintiff's Complaint.

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**COUNT 1 -** Eighth Amendment claim against John Doe (chief of operations for IDOC), John Does (200 members of the Orange Crush tactical unit), Butler, Rees, Williams Lyerla, and Baldwin for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search, shakedown, and related actions.

**COUNT 2 -** Intentional infliction of emotional distress under Illinois state law against John Doe (chief of operations for IDOC), John Does (200 members of the Orange Crush tactical unit), Butler, Rees, Williams Lyerla, and Baldwin.

**COUNT 3 -** Conspiracy under 42 U.S.C. § 1983, in that Defendants agreed to deprive Plaintiff of his constitutional rights and protect one another from liability.

**COUNT 4 -** Violation of the Prison Rape Elimination Act, 42 U.S.C. § 15607 against Defendants.

**COUNT 5 -** Grievance claim against Defendants for mishandling grievances.

**COUNT 6 -** Eighth Amendment claim for failure to intervene against Defendants.

### Counts 1 and 2

Counts 1 and 2 raise the same claims as Counts 1 and 5 in *Ross*. In *Ross*, both counts survived a motion to dismiss. (*See Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, Doc. 76). Thus, properly pled, these claims could survive threshold review. However, in the instant case, Plaintiff has failed to plead facts sufficient to proceed as to any of the defendants. The allegations in Plaintiff's statement of claim are incredibly generic – alleging only that members of the Orange Crush tactical unit sexually abused Plaintiff and other inmates in the East Cell House on April 1, 2016. Facts contained in Plaintiff's exhibits suggests that one or more guards subjected Plaintiff to a humiliating strip search. However, the Complaint does not describe this conduct and Plaintiff does not attempt to bring specific claims against the officer or officers that were personally involved in violating Plaintiff's constitutional rights.

To state a viable claim, Plaintiff would need to describe what happened <u>to him</u> on April 1, 2016 and to connect specific defendants with specific conduct. For instance, the exhibits attached to Plaintiff's Complaint indicate that Plaintiff was subjected to a humiliating strip search in his cell and that a member of the Orange Crush tactical unit directed Plaintiff to bend over and blew on Plaintiff's exposed rectum. A properly amended complaint would describe this conduct and identify this officer as John Doe No. 1. If a second officer was present during the strip search, a properly amended complaint would describe that officer's conduct and identify him as John Doe No. 2 (and so on).

The claims as to John Doe (chief of operations for IDOC), Butler, Rees, Williams, Lyerla and Baldwin amount to liability premised on a theory of *respondeat superior*. That is, Plaintiff

does not allege these defendants were directly involved in the constitutional violations in issue or that they were otherwise personally responsible for the constitutional violations. Instead, Plaintiff alleges these these Defendants are liable because of their role as supervisory officials. Supervisor liability does not apply to claims pursuant to § 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Monell v. N.Y. City Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978) (no *respondeat superior* liability); *see also Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005) ("[Section] 1983 does not create vicarious liability[.]"). Rather, Plaintiff must establish that these defendants were personally responsible for the deprivation of a constitutional right. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

An official satisfies the personal responsibility requirement of section 1983 "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.' " *Id*. (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). Liability can also be established if the injury was caused by an official policy or custom that can be attributed to one of these Defendants. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). The allegations in Plaintiff's Complaint fall short of meeting this standard.

For these reasons, Counts 1 and 2 shall be dismissed without prejudice at this time. However, Plaintiff will be granted leave to file an amended complaint.

**Count 3**

Count 3 raises the same claim as Count 2 in *Ross*, which also survived a motion to dismiss. (*See Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, Doc. 76). Thus, properly pled, this claim could survive threshold review. However, Plaintiff has once again failed to plead facts sufficient to proceed as to any of the defendants.

To state a claim for § 1983 conspiracy, a plaintiff must allege: "(1) an express or implied agreement among defendants to deprive plaintiff of his or [his] constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). A plaintiff cannot satisfy his pleading burden with a bare allegation of conspiracy. *Conney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

Here, Plaintiff's Complaint contains only a bare allegation of conspiracy and fails to link that claim to particular Defendant. Accordingly, this claim shall be dismissed without prejudice and with leave to amend.

**Count 4**

In the same Order referenced above, the Court granted Defendants' motion to dismiss as to Count 4, the Prison Rape Elimination Act ("PREA") claim. (*See Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, Doc. 76). The Court noted:

> While the PREA was intended in part to "increase the accountability of prison officials" and to "protect the Eighth Amendment rights of Federal, State, and local prisoners" (42 U.S.C. § 15602), nothing in the language of the statute establishes a private right of action. In fact, the section of the statute addressing prevention and prosecution is directed toward the National Institute of Corrections which is appropriated funds for establishing an informational clearinghouse, conducting training and compiling annual reports for Congress regarding the activities of the Department of Justice regarding prison rape abatement. 42 U.S.C.A. § 15604. The statute otherwise establishes findings of facts, sets forth statistics, recites research, adopts standards and provides for grant money.

> Further, no court that has considered the issue has found that a private right of action exists under the statute. *Amaker v. Fischer*, 2014 WL 4772202, at \*14 (W.D.N.Y. Sept. 24, 2014). *See Also Krieg v. Steele*, 599 Fed.Appx. 231, 232 (5th Cir.2015) (citing cases); *Collen v. Yamaoka*, No. CIV. 14-00577 SOM, 2015 WL 793085, at \*3 (D. Haw. Feb. 25, 2015) (citing cases); *Porter v. Jennings*, 2012 WL 1434986, at \*1 (E.D.Cal. Apr. 25, 2012) (citing cases).

*Id*. at 8. Adopting the same reasoning, the Court finds that PREA does not create a private cause of action. As such, Count 4 in this case, which is identical to Count 4 in the *Ross* case, shall be dismissed with prejudice.

**Count 5**

The mishandling of grievances, standing alone, does not state a claim under § 1983. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, to the extent that Plaintiff is asserting such a claim as to one or more Defendants, the claim is subject to dismissal with prejudice.

**Count 6**

Plaintiff alleges that Defendants failed to intervene in the shake down "regardless of several inmates' complaint[s] of sexual abuse" and despite having knowledge of the Orange Crush tactical unit conducting similar shake downs on prior occasions. (Doc. 1-2, p. 31). To state a failure to intervene claim under § 1983, a plaintiff must allege that a constitutional violation has been committed by a state actor; and that the defendant had a realistic opportunity to intervene to prevent the harm from occurring. *See Abdullahi v. City of Madison*, 423 F.3d 763, 744 (7th Cir. 2005).

Here, Plaintiff's allegations do not establish that Defendants had a realistic opportunity to prevent the underlying constitutional violation (the shake down). First, the inmate complaints alluded to appear to reference complaints submitted *after* the shake down at issue in this action occurred. Obviously, prisoner complaints cannot trigger a duty to intervene when the alleged constitutional violation occurred in the past and is not ongoing. Second, having knowledge of the Orange Crush tactical units' prior conduct does not establish that the defendants knew the Orange Crush tactical unit was going to conduct a shake down at Menard on April 1, 2016. In

other words, generalized knowledge about the Orange Crush tactical units' prior tactics, does not indicate that Defendants had any particularized knowledge about an impending shake down at Menard. Absent such knowledge, the duty to intervene is not triggered.

Accordingly, Count 6 shall be dismissed without prejudice and with leave to amend.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel. (Doc. 3). The dismissal of the Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff states that he has written to 3 attorneys, but his requests for representation were declined. (Doc. 3). Plaintiff has also attached the letters rejecting his requests for representation. *Id.* This demonstrates that Plaintiff has made some effort to secure counsel.

As to the second inquiry, Plaintiff states that he has some college education. However, he believes he is not able to represent himself because he suffers from glaucoma, mental illness, and is not currently taking medication for his mental illness. *Id.* Nonetheless, the Complaint, exhibits (including grievances written by Plaintiff), and associated motions indicate that Plaintiff is articulate and capable of coherently stating the relevant facts and his legal claims. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required at this point is for Plaintiff to include more factual content regarding the claims he wishes to pursue. Plaintiff alone has knowledge of these facts and no legal training or knowledge is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time and the motion (Docs. 3) is **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

### Disposition

**IT IS HEREBY ORDERED** that **DR. TROST & ASSOCIATES** is **DISMISSED** from this action without prejudice for failure to state a claim. The Clerk is **DIRECTED** to terminate **DR. TROST & ASSOCIATES** as a party in CM/ECF. **PHELPS** is also **DISMISSED** from this action without prejudice for failure to state a claim. The Clerk is **DIRECTED** to terminate **PHELPS** as a party in CM/ECF.

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 1, 2, 3,** and **6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with his case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before June 20, 2017. It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 16-cv-1390-SMY. The amended complaint shall conform to the designation of claims into the counts enumerated by the Court in this order. The amended complaint **SHALL NOT** include any of the counts dismissed with prejudice (Counts 4 and 5). In repleading his complaint, Plaintiff shall specify, by name,[1] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any relevant exhibits he wishes the Court to consider along with the First Amended

---

[1] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification. As is relevant to the instant case, Plaintiff should identify the unknown officer or officers that allegedly assaulted Plaintiff as John Doe 1, John Doe 2 (and so forth). Further, Plaintiff should describe the relevant conduct of each of the John Doe officers.

Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after completion of the § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 23, 2017**

**s/ STACI M. YANDLE**
**Staci M. Yandle**
**United States District Judge**
