IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DANIEL AMAYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   16-cv-1390-RJD |
| | ) | |
| KIMBERLY BUTLER, JOHN A. BURROW, | ) | |
| and MICHAEL ATCHISON, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Daniel Amaya, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center. More specifically, Plaintiff alleges he was sexually assaulted during a shakedown and strip search conducted on April 1, 2016. Plaintiff is proceeding in this matter on his Third Amended Complaint that sets forth the following claims:

>   Count One: Eighth Amendment claim against Defendant John Burrow for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search, shakedown, and related actions on April 1, 2016.
>
>   Count Two: Eighth Amendment claim against Kimberly Butler and Michael Atchison for condoning and/or approving the Orange Crush Tactical Team's policies, practices or customs, and for failing to intervene and stop the deprivation of Plaintiff's constitutional rights on April 1, 2016.
>
>   Count Three: Intentional infliction of emotional distress under Illinois state law against Michael Atchison, John Burrow, and Kimberly Butler in connection with the strip search, shakedown and related actions on April 1, 2016.

Page **1** of **14**

> Count Four: Conspiracy under 42 U.S.C. § 1983, in that Michael Atchison, John Burrow, and Kimberly Butler agreed to deprive Plaintiff of his constitutional rights and protect one another from liability in connection with the strip search, shakedown, and related actions on April 1, 2016.

At all times relevant to the complaint, Defendant John Burrow was a correctional officer at Pinckneyville Correctional Center and a member of the Special Operations Response Team, Defendant Kimberly Butler was the warden at Menard, and Defendant Michael Atchison was the Chief of Operations for the IDOC. Defendants filed a motion for summary judgment on all claims that is now before the Court (Doc. 155). Plaintiff filed a response (Doc. 159), and Defendants filed a reply (Doc. 161). For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## Factual Background

At all times relevant to the complaint, Plaintiff Daniel Amaya was incarcerated within the IDOC at Menard Correctional Center ("Menard") (Doc. 156-1 at 3). During the relevant time, Plaintiff was housed in the East House on Gallery 10 in Cell 20 (*Id.* at 5; *see* Doc. 156-10). Plaintiff's cellmate was an inmate named LaSean Jackson (Doc. 156-1 at 5). On April 1, 2016, Menard's East House, where Plaintiff was housed, was "shaken down" by the Special Operations Response Team ("SORT"), also referred to by inmates as "Orange Crush" (Doc. 64; Doc. 156-1 at 4).

When SORT officers conduct a search, they generally line up with one officer in front of each cell (Doc. 156-4 at 33-34). The officer in front of each cell calls each inmate in the cell to the cell door individually to be strip searched (Doc. 156-1 at 5). During a search, SORT officers wear identical uniforms, including a black helmet with a sliding clear shield that covers their face,

orange jumpsuits, gloves and boots (Doc. 159-7 at 14). There is conflicting testimony as to whether SORT officers were assigned a cell to conduct a strip search or cell shakedown. In particular, Defendant Burrow, Defendant Atchison, and Anthony McAlister, a former captain and member of the tactical team, testified that officers were not assigned to a specific cell (Doc. 156-3 at 8; Doc. 156-4 at 33-34; Doc. 156-8 at 50-51). However, Lance Phelps, a correctional counselor at Menard and former member of the tactical team, testified that officers were assigned a cell to do a strip search (Doc. 159-1 at 29). During the relevant time, SORT officers did not wear any identification (Doc. 159-7 at 14).

During the shakedown of Plaintiff's gallery on April 1, 2016, Plaintiff was strip searched (Doc. 156-1 at 5-6). Plaintiff testified he was called to the bars of his cell and, while he was at the bars, he was removing his clothing, including his underclothes (*Id.* at 6). Plaintiff placed his clothing in the bars of the cell to be searched (*Id.*). The officer conducting the search told Plaintiff to lift his testicles, "wiggle", and pull back his foreskin, to which Plaintiff complied (*Id.*). The officer also told Plaintiff to bend over and the officer then blew into Plaintiff's anus (*Id.*). Plaintiff later heard the officer do the same thing to his cellmate (*Id.* at 6-7). After he donned his clothing, Plaintiff was handcuffed and lined up outside of his cell to be escorted out of the building with the other inmates on his gallery (*Id.* at 7). While lined up outside of his cell, Plaintiff noticed that his shirt was untucked (*Id.*). Plaintiff attempted to tuck in his shirt with his hands cuffed behind his back (*Id.*). The officer who conducted Plaintiff's strip search grabbed Plaintiff by the neck and started tucking in his shirt (*Id.*). While taking this action, the officer grabbed Plaintiff from behind, and grabbed his buttocks and genitalia, telling Plaintiff he had "easy access" (*Id.*). The officer grabbed Plaintiff's genitalia again just before he went down the stairs to the chapel (*Id.*). Plaintiff and the inmates from his gallery remained in the chapel while the SORT officers

were conducting a search of the cells on Plaintiff's gallery (*Id.* at 11). When Plaintiff returned, his cell was in disarray and his legal paperwork had been mixed with his cellmate's and some legal paperwork was missing (*Id.* at 10). Following the events that occurred on April 1, 2016, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") (*Id.* at 15).

Generally, SORT officers return to the same gallery where they strip searched inmates to conduct shakedowns of those cells (Doc. 156-3 at 8). Although Plaintiff did not witness the shakedown of his cell, a log from April 1, 2016 and Defendant Burrow's deposition testimony confirm that Burrow conducted the search of Plaintiff's cell (Doc. 159-5; Doc. 159-6; Doc. 159-7 at 12). There is conflicting testimony as to whether a SORT officer would strip search inmates from the same cell that the officer conducted a cell shakedown. In particular, Defendant Burrow testified that it would be rare to do a cell search of the cell he strip searched (Doc. 156-3 at 13), and Darren Whitley, the Internal Affairs/Intelligence supervisor at the relevant time, and Anthony McAllister testified the officers who conducted the strip searches would not necessarily search the corresponding cell (Doc. 156-6 at 14; Doc. 156-8 at 52). However, Lance Phelps testified that he would "normally" return to do a cell search of the same cell he strip searched (Doc. 159-1 at 30), and Defendant Atchison testified that it "could be" the same officer who conducted both searches (Doc. 159-10 at 66).

During a regularly scheduled mental health appointment on April 4, 2016, Plaintiff reported the alleged sexual assault (Doc. 156-1 at 11; Doc. 156-5 at 3) and an internal affairs investigation was completed with a finding that the allegations were not substantiated (*Id.* at 2).

With regard to the identity of the SORT officer who conducted the strip search, Plaintiff described him at his deposition as a white male who wore shiny-framed glasses and tried to speak to him in Spanish (Doc. 156-1 at 6). Plaintiff had previously described the SORT officer as a

non-black male to his mental health counselor and during the Internal Affairs investigation (*see* Doc. 150-5). Plaintiff testified that the officer who shook him down was the same officer that escorted him and his cellmate to the chapel and then back to their cell because he recognized the officer's voice each time (Doc. 156-1 at 9). Based on a review of a photograph array, Plaintiff identified the officer that conducted his strip search and committed the alleged assault as John Burrow (Doc. 159-8 at ¶ 1). Plaintiff also reviewed the video deposition of John Burrow and positively confirmed that Burrow was the officer who conducted the strip search and assaulted him (*Id.* at ¶ 2). Burrow does not recall doing a strip search of Plaintiff and denies that he sexually assaulted Plaintiff (Doc. 156-3 at 12; Doc. 64). Defendant Burrow testified that he was not wearing glasses in April of 2016 because he had Lasik eye surgery in 2014 (Doc. 156-3 at 16).

Defendant Burrow was also named as a defendant in a lawsuit filed by Plaintiff's cellmate, LaSean Jackson, with the understanding that the same person allegedly assaulted Plaintiff and Mr. Jackson (Doc. 159-7 at 12).

Defendant Butler was the warden at Menard from April 2014 to April 2016, when she became Chief of Programs for IDOC (Doc. 159-11 at 4). Butler does not recall if she was at Menard on April 1, 2016, as that was the first day on her new job (*Id.* at 10). However, she also testified that she made it a point to be at the prison during "full scale" shakedowns (*Id.*). There were many investigations involving Tactical Team members, and according to Darren Whitley, the prisoners were often unable to identify the alleged perpetrator (Doc. 159-9 at 51). Butler testified that "there may have been" grievances referencing an inability of prisoners to identify SORT officers (Doc. 159-11 at 13). Once an internal affairs investigation was completed, Whitley would submit it to Butler who, as warden, would either approve or disapprove (Doc. 159-9 at 60). Butler testified that she reviewed internal affairs investigations, but relied on

investigative staff to conduct the investigations as they were specially trained in that area (Doc. 159-11 at 7).   With regard to the investigation into Plaintiff's claims of sexual assault, Defendant Butler testified that the investigation was not thorough and she "probably would have requested more interviews based on the incident report" (*Id.* at 16).

Prior to the occurrence at issue in this lawsuit, in October of 2013 or 2014, Plaintiff had submitted a grievance directed to Butler asserting the institution had knowledge that "Orange Crush" were abusing inmates (Doc. 156-1 at 13).   Plaintiff is also aware of another lawsuit, *Ross v. Gossett, et al.*, 15-cv-309-SMY, that should have put Butler on notice of "sexual misconduct with officers and inmates during the Orange Crush proceedings" (*Id.*).

Defendant Michael Atchison, the Chief of Operations for the IDOC at all times relevant, testified that he is aware of the *Ross* lawsuit filed in 2015 and has been in conferences regarding the same (Doc. 156-4 at 25).   Atchison acknowledged that SORT officers do not wear identifiers on their jumpsuit that would identify them by name, and testified that he was not aware of any document listing the SORT officer that conducted a particular strip search (*Id.* at 30-35). Anthony McAllister testified that he discussed with Defendant Atchison the inability to identify SORT officers due to a lack of identification (*Id.* at 28).   McAllister also testified that SORT officers now may possibly have identification likely because of complaints similar to those made by Plaintiff here (*Id.* at 90).   Atchison does not know if he was at Menard during the SORT shakedown on April 1, 2016 (*Id.* at 64).

### **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also*

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

### *Count One – Eighth Amendment claim against Defendant Burrow*

Plaintiff alleges Defendant Burrow violated his Eighth Amendment rights by inflicting unnecessary physical and emotional pain and suffering upon him during the strip search that occurred on April 1, 2016. More specifically, Plaintiff alleges Defendant Burrow blew into his anus and grabbed his testicles during a strip search executed by SORT officers.

Defendant Burrow asserts summary judgment in his favor is warranted because Plaintiff has not provided sufficient evidence he personally participated in or caused the alleged unconstitutional action. Burrow relies on *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017), asserting Plaintiff is not able to determine which one of the several SORT officers present for the April 1, 2016 shakedown violated his constitutional rights.

It is well settled that liability under § 1983 is predicated on a defendant's personal

involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

As a preliminary matter, the Court finds Plaintiff's claim related to the strip search is easily distinguishable from *Colbert* insofar as the plaintiff in *Colbert* named ten officers who were involved in a search of his apartment, but admitted he was unable to identify the officers who destroyed his property. 851 F.3d at 657. In this instance, Plaintiff has identified Burrow as the officer who assaulted him during the strip search on April 1, 2016, and Plaintiff was clearly physically present during the alleged assault and able to make such an identification. However, *Colbert* is similar to Plaintiff's claims related to the shakedown of his cell. As argued by Defendant, although Burrow was involved in and signed the shakedown slip of Plaintiff's cell, there were a number of other SORT officers involved in the shakedown of the gallery on that date, and cells were double and triple-checked by supervisory staff (*see* Doc. 156-8 at 65-66). As such, it is impossible to determine who left Plaintiff's cell in disarray. Further, based on the record before the Court, it is not apparent that the shakedown of Plaintiff's cell and the attendant "messiness" gives rise to a claim under the Eighth Amendment. For these reasons, Burrow is entitled to summary judgment as to Count One related to the shakedown of Plaintiff's cell.

The Court finds, however, that there is a genuine dispute of material fact as to whether Defendant Burrow was personally involved in the strip search and alleged sexual assault that occurred on April 1, 2016. The Court acknowledges Defendant's position that he does not fit Plaintiff's description of the individual who sexually exploited Plaintiff as he does not wear

glasses and asserts Plaintiff only named him as a defendant because he searched Plaintiff's cell on April 1, 2016.  However, Plaintiff has set forth evidence that he was able to identify Defendant Burrow by photograph and audio based on his recollection from April 1, 2016.  Plaintiff also submitted evidence that SORT officers strip searched inmates from the cells that they also searched, and it is undisputed that Burrow completed a shakedown of Plaintiff's cell on April 1, 2016.  As such, there is at least some evidence that positively identifies Burrow as Plaintiff's assailant and the Court must view the evidence at this stage in the light most favorable to Plaintiff.  Because there is a genuine dispute as to the personal involvement of Burrow in the alleged sexual assault set forth in Count One, Defendant Burrow is not entitled to summary judgment as to that claim.

***Count Two – Eighth Amendment claim against Defendants Butler and Atchison***

Defendants Butler and Atchison assert summary judgment should be granted in their favor because they were not personally involved in the alleged constitutional deprivation and the doctrine of *respondeat superior* does not apply to actions under § 1983.  Defendants argue there is no evidence they were at Menard on April 1, 2016, and assert Plaintiff cannot base his claim on their knowledge of other, prior cases involving alleged sexual misconduct by a member of the SORT.

Plaintiff asserts he does not premise his claim on the doctrine of *respondeat superior*, and asserts that Butler and Atchison should be held personally liable because they oversaw, turned a blind eye to, and failed to intervene on the known violations of SORT officers.  More specifically, Plaintiff argues these Defendants knew about the allegations against SORT officers, had reasonable opportunities to prevent future conduct of that nature, and instead, willingly and knowingly turned a blind eye to the "unsubstantiated" allegations against SORT officers,

including allegations where a SORT officer could not be identified.

To state a claim for failure to intervene under the Eighth Amendment, Plaintiff must demonstrate that he was held under conditions posing a substantial risk of serious harm and that Defendants acted with deliberate indifference to that risk. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). To constitute serious harm, "the deprivation alleged must be objectively, sufficiently serious." *Id.* at 910. It is well settled that being sexually assaulted meets that standard.

A substantial risk that the serious harm will occur has been variously described as a known propensity of one person to harm a particular individual or class of individuals; highly probable attacks; or a heightened risk of a plaintiff being assaulted. *Brown*, 398 F.3d at 911.

Here, Plaintiff has provided some evidence that there were previous complaints and lawsuits against SORT officers for the way in which they conducted their searches. However, even when viewing the evidence in the light most favorable to Plaintiff, the Court cannot find any evidence in the record to support a finding that there was a substantial risk of the type of serious harm alleged by Plaintiff. Further, there is no indication that Defendants Butler or Atchison were aware of any propensity by Defendant Burrow to commit a sexual assault. The Court understands that Plaintiff's cellmate, LaSean Jackson, also filed suit against Burrow for an alleged sexual assault; however, these allegations did not precede those here as both Plaintiff's and Jackson's lawsuits relate to incidents that occurred on April 1, 2016. Moreover, even if there was evidence that Burrow presented a substantial risk of serious harm to Plaintiff, there is no evidence that Defendants knew of the risk of assault and disregarded it. The mere fact that there had been other complaints about SORT officers and the inability of inmates to identify officers is not sufficient to demonstrate a known risk of assault by Burrow.

For these reasons, Defendants Butler and Atchison are entitled to summary judgment as to Count Two.

***Count Three – Intentional infliction of emotional distress under Illinois state law against Defendants Atchison, Burrow, and Butler***

Under Illinois law, a plaintiff must establish the following elements to succeed on a claim of intentional infliction of emotional distress: (1) that the defendants' conduct was extreme and outrageous; (2) that Defendants intended their conduct to inflict severe emotional distress or knew there was at least a high probability their conduct would inflict such distress; and (3) that their conduct actually caused severe or extreme emotional distress. *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006). Extreme and outrageous conduct is that which goes "beyond all bounds of decency and [is] considered intolerable in a civilized community." *Id.* (citations omitted).

The Court has already found that Defendants Butler and Atchison did not violate the Eighth Amendment in failing to intervene and protect Plaintiff from the alleged sexual assault that occurred on April 1, 2016. Based on the record in this case, the Court concludes that Plaintiff's failure to establish sufficient evidence to proceed on his § 1983 claim against Butler and Atchison necessarily precludes him from making an adequate showing of extreme and outrageous conduct or that these Defendants intentionally or recklessly caused severe emotional distress as a matter of law.

With regard to Defendant Burrow, however, the Court reaches a different conclusion. Based on the record before the Court, a reasonable jury could conclude that Defendant Burrow's conduct was "extreme and outrageous" to rise to the level contemplated for an IIED claim. Moreover, Plaintiff has presented evidence he was diagnosed with PTSD as a result of the alleged sexual assault.

The Court also rejects Defendant Burrow's argument that Plaintiff's IIED claim is barred by state law sovereign immunity or public official immunity as the statutes on which Burrow relies require that the actions at issue be within Burrow's authority and aligned with current law. Here, the allegations that Burrow blew into Plaintiff's anus and grabbed his genitalia are beyond his employment authority and, as testified to by all Defendants, inappropriate and violate established law. Accordingly, Plaintiff shall be allowed to proceed on Count Three against Defendant Burrow, but summary judgment on this claim shall be awarded in favor of Defendants Butler and Atchison.

### *Count Four - Conspiracy under 42 U.S.C. § 1983, in that Michael Atchison, John Burrow, and Kimberly Butler*

Defendants assert summary judgment as to Count Four is warranted because Plaintiff has admitted that Defendants did not actually engage in a conspiracy or conspire to protect the SORT officer who allegedly sexually assaulted Plaintiff. Plaintiff did not respond to Defendants' argument as to Count Four.

The Court finds no evidence in the record to support this claim and summary judgment is therefore granted in favor of Defendants on Count Four.

### *Qualified Immunity*

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-part inquiry. The first question is whether the defendants' conduct violated a

constitutional right. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. *Id.* The two questions may be considered in either order. *Volkman*, 736 F.3d at 1090 (citing *Pearson*, 555 U.S. at 236-42).

Defendants Burrow, Butler, and Atchison assert they are entitled to qualified immunity arguing Plaintiff cannot establish they violated his constitutional rights and, if they were to be held liable on the facts alleged, it would constitute a heightened standard for an Eighth Amendment claim.

The Court need not consider the question of qualified immunity as to Defendants Butler and Atchison as the Court has already found they did not violate Plaintiff's constitutional rights. With regard to Defendant Burrow, the only claim on which Plaintiff is proceeding is Count One concerning the alleged sexual assault that occurred on April 1, 2016. The Court finds Burrow is not entitled to qualified immunity as to this claim because it was clearly established at the time of the occurrence that sexually exploiting and assaulting an inmate violated the inmate's constitutional rights.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Burrow, Butler, and Atchison (Doc. 155) is **GRANTED IN PART AND DENIED IN PART**. The Clerk of Court is directed to enter judgment in favor of Defendants Kimberly Butler and Michael Atchison and against Plaintiff at the close of this case. Summary judgment is also **GRANTED** in favor of Defendant Burrow as to Plaintiff's claim in Count One related solely to the shakedown of his cell.

Plaintiff shall proceed in this matter on the following claims:

Count One: Eighth Amendment claim against Defendant John Burrow for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search that occurred on April 1, 2016.

Count Three: Intentional infliction of emotional distress under Illinois state law against Defendant John Burrow in connection with the strip search that occurred on April 1, 2016.

**IT IS SO ORDERED.**

**DATED: June 17, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**