IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL AMAYA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.   16-cv-1390-RJD |
| | ) |
| JOHN A. BURROW, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on Plaintiff's Motion in Limine to Nullify Any and All Proposed Settlement (Doc. 179), and Defendant's Motion to Enforce Settlement and Motion for Sanctions (Doc. 182). For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** as to his request that the settlement agreement be enforced.

**Background**

Plaintiff Daniel Amaya brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging he was sexually assaulted during a shakedown and strip search conducted on April 1, 2016 at Menard Correctional Center. Plaintiff was assigned counsel in September 2019. Thus, Plaintiff was represented through much of discovery and the entirety of the summary judgment phase of this litigation.

On July 7, 2021, following entry of the Court's order on summary judgment, the parties filed a notice indicating that the parties, through counsel, agreed to terms of settlement in this matter (Doc. 177). The undersigned then issued a 120-day order and advised that judgment of dismissal with prejudice would enter on November 8, 2021 (Doc. 178).

On October 4, 2021, Plaintiff filed an "Emergency Motion in Limine" to nullify the proposed settlement (Doc. 179).  In this motion, Plaintiff asserts that during the pendency of this action he was harassed, intimidated, threatened, and coerced into accepting the proposed settlement.  Plaintiff specifically complains about Officer Bailey, who is not a party to this action.  Plaintiff asserts he advised his attorney about the harassment, but no action was taken.  Plaintiff requests that his settlement agreement be voided as he was under "distress from retaliation of which counsel was aware."

On October 14, 2021, Defendant Burrow filed a Motion to Enforce Settlement and Motion for Sanctions (Doc. 182).  Defendant explains he received executed settlement documents from Plaintiff's counsel (that had been signed by both Plaintiff and Plaintiff's counsel) on September 2, 2021, and sent the executed documents to IDOC for signature on September 17, 2021.  On September 27, 2021, Defendant's counsel received the documents back from IDOC, fully executed.  Plaintiff filed his "Emergency Motion in Limine" on October 4, 2021, and on October 14, 2021, the executed settlement documents were sent to the Office of the Illinois Attorney General for final signature and submission to CMS.

In his motion, Burrow argues there was a valid contract as there was an offer, acceptance, and a mutual meeting of the minds on all material elements.  Defendant argues Plaintiff simply changing his mind is an insufficient reason to not enforce the agreement.  Defendant asks that the settlement agreement be enforced as a matter of equity, or, in the alternative, that Plaintiff be sanctioned for his refusal to effect settlement per the terms agreed to by the parties and his claims be dismissed with prejudice and that Defendant be awarded costs for filing his motion.

The undersigned held a hearing on October 19, 2021, wherein Plaintiff's attorney, Christian Willenborg, was terminated from his representation of Plaintiff.  Plaintiff was directed

to file a response to Defendant's Motion to Enforce Settlement and Motion for Sanctions.

In his response filed November 5, 2021, Plaintiff acknowledges that Attorney Willenborg was allowed to negotiate a settlement on his behalf, but did so with knowledge that Plaintiff was being harassed. Plaintiff reiterates he was being harassed and intimated and agreed to settlement while under duress. As such, Plaintiff asserts there was not a meeting of the minds. Plaintiff asserts he sought help from correctional officers, counselors, internal affairs, the Illinois State Police, the IDOC Director, and his former attorney.

Plaintiff further contends that when he signed the agreement, the pages were double-sided and he never saw page two as it was blank. Plaintiff asserts when he asked about the missing page he was told to sign the document or he could receive a disciplinary ticket.

Plaintiff attached over 100 pages of documents to his response. Plaintiff does not explain the relevancy of the attached documents. Upon review, the Court finds many of the documents relate to issues Plaintiff had with Officer Bailey, the property officer at Pinckneyville. Relevant to the issues before the Court, Plaintiff asserts Bailey at one point saw that Plaintiff had a lawsuit against Burrow, and then proceeded to provide Plaintiff with a set of headphones as "payment" if Plaintiff dropped the Burrow lawsuit, with the promise of more free property. Plaintiff was later found guilty of certain offenses related to this accusation as it was found to be false. However, the ARB later expunged the disciplinary record. These incidents with Bailey occurred in April 2020. Beyond the issues with Officer Bailey and their tangential reference to Burrow and this lawsuit, it is unclear how the documents support Plaintiff's position that he was under duress when he signed the settlement documents in this case.

The undersigned held a hearing on the pending motions concerning the settlement on December 13, 2021. At the hearing, Plaintiff testified he signed the settlement documents in early

September 2021 outside of the "BFI" room. Plaintiff testified he was given the documents by Diane Skorch. Upon review, Plaintiff noticed page two of four was missing and, when he advised Skorch about the issue, he was told he needed to sign the documents and talk to his lawyer. Plaintiff testified no one forced him to sign the documents; however, he explained that if he does not do what he is told to do he is subject to disciplinary procedures.

Plaintiff testified he spoke to his attorney numerous times concerning the documented issues with Bailey, but his attorney never informed anyone of the allegations against Bailey.

With regard to settlement discussions, Plaintiff testified that around May or June 2021 he allowed his attorney to enter into settlement negotiations with Defendant. Plaintiff also testified he agreed to the amount that was offered and reflected in the settlement agreement. However, Plaintiff asserts the agreement was never "solidified." Plaintiff also testified he wanted to ensure that notwithstanding any settlement he would not be prevented from seeking relief from Atchison at a later date.

Chalene Hale, the litigation coordinator at Pinckneyville at all times relevant, also testified at the hearing. Ms. Hale explained that the settlement documents were sent to her via email for Plaintiff's signature by Plaintiff's attorney around the end of August 2021. Ms. Hale testified she printed all of the documents that were sent, disputing Plaintiff's testimony that Ms. Skorch provided him the documents. Ms. Hale recalled providing the settlement documents she had printed to Plaintiff and gave Plaintiff time to sit on pews in the clinical services hallway to review the same. Ms. Hale did not stay with Plaintiff while he reviewed the documents, nor did she see anybody with Plaintiff during this time. Ms. Hale testified she may have checked on Plaintiff to see if he had signed them and, once she received the signed documents from Plaintiff, she scanned them in and sent them back to whomever sent them. Ms. Hale testified it was possible she printed

the documents double-sided, but she printed all of the documents that were sent to her.

Ms. Hale explained that if an inmate does not follow a direct order there is a procedure for writing them a ticket. However, she asserted she does not write tickets.

## Discussion

Settlement agreements are contracts and are interpreted according to the law of the jurisdiction in which the contract was allegedly created — in this instance, Illinois. *In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011). As with any contract, there must be an offer to settle, an acceptance of the offer, and a meeting of the minds. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). "Illinois courts favor voluntary settlements, and litigants are bound by them, regardless of how unwise they may seem in retrospect, unless they are grossly unfair or unconscionable." *Opper v. Brotz*, 661 N.E.2d 1159, 1162 (Ill. App. Ct. 1996) (citations omitted).

A threshold inquiry before determining the terms of an agreement, however, is whether an attorney who purportedly agreed to a settlement on behalf of a client had the express authority to do so. An attorney's representation of a client does not automatically confer on the attorney the authority to compromise or settle the case. *See Brewer v. Nat'l R.R. Passenger Corp.*, 649 N.E.2d 1331, 1333-34 (Ill. 1995). Instead, the attorney must receive the client's "express authority" to settle. *Id.* at 1334. Notably, "[a]n attorney's authority to agree to an out-of-court settlement will not be presumed and the burden of proof rests on the party alleging authority to show that fact." *Magallanes v. Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (citations omitted); *see also Schmalz v. Village of North Riverside*, Case No. 13-cv-8012, 2016 WL 6395586, at *3 (N.D. Ill. Oct. 28, 2016) (defendants' motion to enforce settlement denied on basis that defendants did not meet burden of proving that plaintiff's counsel had authority to accept settlement offer on

plaintiff's behalf).

Here, there was clearly an out-of-court settlement. As such, the Court must find that Plaintiff's counsel had express authority to settle his case on the terms proffered by Defendant. Plaintiff's filings made no mention of any lack of authority on behalf of his attorney. Indeed, Plaintiff made clear in his filings that he claimed he was under duress in signing the documents. At the hearing, Plaintiff's testimony indicated that his attorney had the authority to enter into negotiations and that he agreed to the amount offered and reflected in the settlement agreement. Plaintiff also testified that his attorney told him he would be receiving a copy of the settlement agreement and his attorney advised him to review everything because "there was an issue with one of the Defendants that got dismissed," which Plaintiff testified was Michael Atchison. Based on Plaintiff's testimony, it appears Plaintiff was concerned about waiving his rights to appeal the dismissal of Defendant Atchison. The Court finds, however, that Plaintiff's concern did not obviate his attorney's authority to settle this matter on his behalf. Moreover, when Plaintiff signed the settlement documents he clearly evidenced his attorney's authority to settle this matter on his behalf.

The Court acknowledges Plaintiff's argument that he signed the documents under duress. However, the Court finds Plaintiff has failed to present any evidence to substantiate such a claim. Duress or coercion is a ground for invalidating the terms of a settlement agreement. *See, e.g., Selyutin v. Aon PLC*, 2021 WL 4936245, at *2 (N.D. Ill. May 7, 2021) ("voluntary agreements in Illinois are presumptively valid unless a party proves, for example, … 'a serious inequity in the bargaining process, such as the existence of grossly disparate bargaining positions, which includes such factors as the parties' relative education and sophistication, representation by legal counsel, and the presence of duress or oppression.'" (quoting *Opper*, 661 N.E.2d at 1162); *see also*

*Musgrove v. Petters*, No. 92 C 3267, 1992 WL 205858, at *2 (N.D. Ill. Aug. 19, 1992). For duress to exist, there must be "some imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another." *Lannan v. Reno*, 139 F.3d 901 (7th Cir. 1998) (internal quotation and citation omitted). Here, Plaintiff seems to link his duress to harassment endured by Officer Bailey; however, the issues with Officer Bailey that concerned this lawsuit occurred in April 2020, more than one year prior to signing the settlement agreement at issue. There is no indication Plaintiff was met with harassment or undue influence near the time of signing his documents or giving authority for his counsel to engage in settlement negotiations. Moreover, the Court finds Plaintiff's claim that he was made to sign the documents or face disciplinary procedures disingenuous. Plaintiff testified that no one made any such threat at the time he signed the documents or forced him to sign, and Ms. Hale testified she does not write disciplinary tickets.

## Conclusion

Based on the foregoing, Plaintiff's Motion in Limine to Nullify Any and All Proposed Settlement (Doc. 179) is **DENIED**, and Defendant's Motion to Enforce Settlement and Motion for Sanctions (Doc. 182) is **GRANTED** as to his request that the settlement agreement be enforced. The Settlement Agreement and General Release that was fully executed by the parties as of September 27, 2021 shall be enforced. The Court need not consider Defendant's alternative argument for sanctions. Defendant shall file a notice with the Court by **January 21, 2022** advising of the status of the settlement and payment concerning the same.

**IT IS SO ORDERED.**

**DATED: December 22, 2021**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**
